# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

FELIPE RIVADENEIRA,

     Plaintiff,

v.                                                                  Case No: 8:21-cv-1925-CEH-AAS

UNIVERSITY OF SOUTH FLORIDA
and UNIVERSITY OF SOUTH
FLORIDA BOARD OF TRUSTEES,

     Defendants.

_____/

## O R D E R

     This cause comes before the Court upon Defendants University of South Florida and University of South Florida Board of Trustees's Motion to Dismiss Plaintiff's First Amended Class Action Complaint (Doc. 13), to which Plaintiff Felipe Rivadeneira responds in opposition (Doc. 16). Having considered the filings, and with the benefit of oral argument, the Court will dismiss Rivadeneira's sole federal claim and decline to exercise supplemental jurisdiction over the remaining state-law claims.

## I.   FACTUAL BACKGROUND[1]

     Felipe Rivadeneira and members of the putative class paid tuition and other fees to attend the University of South Florida for on-campus, in-person educational

---

[1] Although the Motion to Dismiss cites Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure as the bases for dismissal, the relevant arguments for purposes of this order fall under Rule 12(b)(6). As such, the facts are derived from the operative complaint, the allegations of which the Court must accept as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

services and experiences, including use of the campus facilities. Doc. 1-1 ¶1. But as a result of Coronavirus Disease 2019, they were required to take courses online, they lost access to the campus, and they failed to receive campus-based services for which they paid. *Id.* at ¶¶1–3. Despite these changes, the University of South Florida failed to refund any portion of the tuition fees or any other fees. *Id.* at ¶5. On behalf of himself and the putative class, Rivadeneira now lodges the following claims against the University of South Florida and the University of South Florida Board of Trustees: (1) a breach-of-contract claim (Count I); (2) an alternative claim for unjust enrichment (Count II); (3) a claim for violation of the Takings Clause of the Fifth Amendment to the United States Constitution (Count III); (4) a claim for inverse condemnation under Article X, Section 6(a) of the Florida Constitution (Count IV). *Id.* at ¶¶112–153.

Invoking federal-question jurisdiction, USF and USFBOT removed the action on the basis of Rivadeneira's claim under the Fifth Amendment, which is the only federal claim. Doc. 1 at 2. USF and USFBOT now seek dismissal of Rivadeneira's claims under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 13 at 1. USF and USFBOT argue that sovereign immunity bars the breach-of-contract and unjust-enrichment claims. *Id.* at 2–15. And, relevant here, they argue that the Fifth Amendment claim and the inverse-condemnation claim both fail to state a claim. *Id.* at 15–23. Generally, Rivadeneira responds that sovereign immunity does not bar the claims and that he has adequately alleged his Fifth Amendment and

inverse-condemnation claims. Doc. 16 at 11–23. The Court held oral argument on the Motion to Dismiss (Doc. 33).[2]

## II.   LEGAL STANDARD

Relevant here, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.   DISCUSSION

### A. USFBOT is the Proper Defendant

First things first. Rivadeneira sues USF and USFBOT, but USF is an improper defendant. Under Florida law, "[e]ach board of trustees shall be a public body corporate by the name of 'The (name of university) Board of Trustees,' with all the

---

[2] The parties have also notified the Court of supplemental authority (Docs. 22, 24, 28, 29, 30, 32).

powers of a body corporate, including . . . to contract and be contracted with, to sue and be sued . . . ." Fla. Stat. § 1001.72(1). As such, USFBOT is the proper defendant, not USF. *See Parfitt v. Fla. Gulf Coast Univ. Bd. of Trs.*, No. 2:19-cv-727-SPC-NPM, 2020 WL 1873585, at *2 (M.D. Fla. Apr. 15, 2020) ("The Board—not FCGU—is the correct entity to sue."); *see also United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987) (holding, under since-repealed statutes, that "the University of Florida is not endowed with an independent corporate existence to be sued in its own name" and dismissing the University of Florida as an improper party). During oral argument, Rivadeneira's counsel conceded that USF is an improper defendant. Therefore, the Court will dismiss Rivadeneira's claims against USF.

### B. The Court Construes Count III as Arising under 42 U.S.C. § 1983, and USFBOT is Not a "Person" under § 1983

Turning to the Fifth Amendment claim, USFBOT argues that Rivadeneira brings the claim under 42 U.S.C. § 1983. Doc. 13 at 16. USFBOT contends that, through the Fourteenth Amendment, the Takings Clause of the Fifth Amendment is applicable to the states and that § 1983 is the statutory mechanism for enforcing the Fourteenth Amendment. Doc. 13 at 16. Arguing that it does not qualify as a "person" under § 1983, USFBOT asserts that the Court must dismiss the claim. *Id.* at 16–17.

Within this claim, Rivadeneira identifies an alleged property right and an alleged property interest: (1) an owner's right under common law in funds held in an account managed by another; and (2) a "protected property interest in an enforceable right" to receive an in-person educational experience and access to the campus and

4

facilities. Doc. 1-1 ¶¶143–44. Rivadeneira demands judgment in accordance with the prayer for relief, which seeks, among other relief, compensatory damages, disgorgement, restitution, and attorney's fees.[3] Doc. 1-1 at 39–40.

"Every person who, under the color of any statute, ordinance, regulation, custom or usage, of any state . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. Thus, § 1983 affords a remedy against any "person" who, under the color of state law, deprives another of rights protected by the Constitution. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). And the Fifth Amendment protects citizens from government decisions that deprive them of their property or the full use of their property without just compensation. *Jackson v. City of Stone Mountain*, 232 F. Supp. 2d 1337, 1366 (N.D. Ga. 2002).

A § 1983 claim may be based upon a violation of the Bill of Rights if the right in question has been incorporated into the Fourteenth Amendment Due Process Clause and made applicable to the states. *Civil Actions Against State and Local Government—Its Divisions, Agencies & Officers* § 7:2 (2d ed. 2002). The Fifth

---

[3] Rivadeneira also alleges that he is "entitled to injunctive relief" prohibiting USFBOT "from continuing to charge full tuition and other fees when providing online distance learning and limited or no access to campus" and "injunctive relief ordering [USFBOT] to return funds unlawfully withheld." Doc. 1-1 ¶146.

Amendment's right to just compensation for the taking of property is incorporated. *Id.* Thus, the Takings Clause of the Fifth Amendment is applicable to the states through the Fourteenth Amendment.[4] *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). Section 1983 was enacted to enforce the provisions of the Fourteenth Amendment. *Quern v. Jordan*, 440 U.S. 332, 354 (1979) (Brennan, J., concurring).

Research reveals numerous cases where plaintiffs brought claims under the Takings Clause of the Fifth Amendment against state entities, using § 1983 as the vehicle to bring those claims. *See, e.g., S. Grande View Dev. Co., Inc. v. City of Alabaster*, 1 F.4th 1299, 1302 (11th Cir. 2021); *Bickerstaff Clay Prods. Co, Inc. v. Harris Cnty.*, 89 F.3d 1481, 1484 n.4 (11th Cir. 1996); *Hadar v. Broward Cnty.*, 692 F. App'x 618, 619 (11th Cir. 2017); *Bee's Auto, Inc. v. City of Clermont*, 8 F. Supp. 3d 1369, 1371 (M.D. Fla. 2014). Here, Rivadeneira brings this claim against a state entity for violation of his right to just compensation for a taking of property under the Fifth Amendment to the United States Constitution.

In response to USFBOT's argument that he brings this claim under § 1983, Rivadeneira simply states that the "claim is self-executing, without reliance upon § 1983." Doc. 16 at 20. Rivadeneira does not offer any supporting legal authority in response to USFBOT's argument, nor does Rivadeneira attempt to distinguish

---

[4] However, the Eleventh Circuit has recognized that "the [F]ifth [A]mendment's just compensation clause is not applicable where there has been no 'public use.'" *Wheeler v. City of Pleasant Grove*, 833 F.2d 267, 270 n.3 (11th Cir. 1987). The Eleventh Circuit explained in *Wheeler* that a landowner could "nevertheless have a damage cause of action under section 1983 since the taking may violate his [F]ourteenth [A]mendment rights to due process." *Id.*

USFBOT's authority on this point. When pressed during oral argument as to why the Court should not construe the claim as arising under § 1983, Rivadeneira's counsel generally responded that the claim is not explicitly pleaded as a claim under § 1983 and that the claim does not cite to § 1983. Yet again, Rivadeneira's counsel did not provide any supporting legal authority during oral argument in opposing USFBOT's § 1983 argument or for why the Court should not construe this claim as arising under § 1983.[5]

In *LaFleur v. State University System of Florida*, the plaintiffs—represented by Rivadeneira's counsel—brought a claim nearly identical to this Fifth Amendment claim via § 1983.[6] No. 8:20-cv-1665-KKM-AAS (M.D. Fla.), Doc. 15 at 18. The magistrate judge issued a report and recommendation, which the district judge later adopted, recognizing that the Board of Governors—the entity sued in that action—was not a "person" under § 1983. *LaFleur v. State Univ. Sys. of Fla.*, No. 8:20-cv-1665-KKM-AAS, 2021 WL 3727832, at *7 (M.D. Fla. Aug. 2, 2021), *report and recommendation adopted*, 8:20-cv-1665-KKM-AAS, 2021 WL 3725243, at *1 (Aug. 23,

---

[5] The Court recognizes that "[l]andowners are also entitled to bring inverse condemnation actions directly under the Fifth Amendment." *Civil Actions Against State and Local Government, supra*, at § 7:45. Rivadeneira alleges that USFBOT deprived him of a right to sums paid to USFBOT in exchange for "contracted for educational benefits" and deprived him of a right to receive in-person educational experience and access to the campus and facilities. Doc. 1-1 ¶¶143–44. Despite the opportunity to present argument in his response to the Motion to Dismiss and during oral argument, he has not argued, for purposes of this federal claim, that the claim is comparable to a landowner bringing an inverse condemnation claim directly under the Fifth Amendment.

[6] For example, the allegation that an owner's right under common law in funds held in an account managed by another is almost identical to that allegation in this action. *LaFleur, et al. v. State Univ. Sys. of Fla., et al.*, No. 8:20-cv-1665-KKM-AAS (M.D. Fla.), Doc. 15 ¶¶65.

2021). Rivadeneira added his Fifth Amendment claim, which does not explicitly reference § 1983, on the same day that the magistrate judge in *LaFleur* recommended dismissing the plaintiffs' Fifth Amendment claim under § 1983 (Doc. 1). During oral argument, Rivadeneira's counsel conceded that Rivadeneira's nearly identical Fifth Amendment claim "probably . . . dropped" the reference to § 1983 from *LaFleur* in response to the magistrate judge's report and recommendation.

For all of the above reasons, the Court construes this Fifth Amendment claim as arising under § 1983. *See Knick*, 139 S. Ct. at 2167–68 ("A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it . . . . mean[ing] that the property owner has suffered a violation of his Fifth Amendment rights when the government takes his property without just compensation, and therefore may bring his claim in federal court under § 1983 at that time.").

"A state, a state agency, and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable; but a state official sued in his official capacity is a person for purposes of § 1983 when prospective relief, including injunctive relief, is sought."[7] *Edwards v. Wallace Comm. Coll.*, 49 F.3d

---

[7] Plaintiff's Fifth Amendment claim seeks the relief referenced in his prayer for relief, which requests damages. Doc. 1-1 at 39–40. Within this claim, Plaintiff alleges simple entitlement to "injunctive relief," including "injunctive relief ordering [USFBOT] to return funds unlawfully withheld." *Id.* at ¶146. And he generally alleges in the operative complaint that he seeks "injunctive and declaratory relief." *Id.* at ¶21. Plaintiff's prayer for relief does not expressly seek injunctive relief, except for "an order awarding such other and further relief as may be just and proper, including injunctive relief . . . ." *Id.* at 40. Further, he does not sue any state official in that individual's official capacity.

1517, 1524 (11th Cir. 1995). "In Florida, the Boards of Trustees of state universities are state agencies under Florida law." *Childers v. Fla. Gulf Coast Univ. Bd. of Trs.*, No. 2:15-cv-722-MRM, 2018 WL 623648, at *6 (M.D. Fla. Jan. 30, 2018). The Eleventh Circuit has recognized that Florida law defines the USF Board of Trustees as part of the state government. *Univ. of S. Fla. Bd. of Trs. v. CoMentis, Inc.*, 861 F.3d 1234, 1235 (11th Cir. 2017). Because USFBOT is not a "person" under § 1983, the Court must dismiss this claim with prejudice. *See Childers*, 2018 WL 623648, at *6 ("Accordingly, because FGCU Board of Trustees is a state agency, it is not a person within the meaning of § 1983.").

### C. Alternatively, Count III Fails to State a Claim for Relief

Alternatively, even if Count III does not arise under § 1983, the Court will dismiss the claim because Rivadeneira does not assert facts that "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

USFBOT argues that Rivadeneira does not have a property interest in his tuition and fee payments. Doc. 13 at 17–18. USFBOT also argues that requiring students to pay tuition and fees does not constitute a taking. *Id.* at 18. Relying upon various cases, Rivadeneira responds that he has plausibly alleged the identified property right and property interest, which "were wrongfully and unlawfully taken." Doc. 16 at 20–22.

To state a takings claim under federal law, "a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected" *Givens v. Ala. Dep't of Corrs.*, 381 F.3d 1064, 1066 (11th Cir. 2004). "Only if the plaintiff actually possesses such an interest will a reviewing court then determine whether the

deprivation or reduction of that interest constitutes a 'taking.'" *Id.* Significantly, to determine whether a particular property interest is protected, a court must look to "existing rules or understandings that stem from an independent source such as state law." *Id.* (internal quotation marks omitted). "Under Florida law, a statute, ordinance, contract, policies, and practices of an institution which support claims of entitlement may create a property interest." *Key W. Harbour Dev. Corp. v. City of Key W.*, 987 F.2d 723, 727 (11th Cir. 1993).

Rivadeneira bases this Fifth Amendment claim upon: (1) a property right in the tuition and fees paid to USF in exchange for contracted-for educational benefits; and (2) a property interest in "an enforceable right" to receive an in-person educational experience and access to the campus and facilities.

### 1. Property Right in Tuition and Fees

First, Rivadeneira alleges that, under common law, an individual has property rights to his or her funds that are held in an account managed by another. Doc. 1-1 ¶143. Seeking to apply that principle to this action, he alleges that, because USF received payment of tuition and other fees from private citizens "as consideration for the benefit of receiving in-person course instruction, housing, and other on-campus benefits," the funds are private in nature "but held by a public entity." *Id.* On this basis, he alleges that he has a protected property right in all sums of money paid to USF in exchange for the contracted educational benefits. *Id.*

But a university's charging, and acceptance, of tuition and fees is distinguishable from a situation where an individual owns funds in an account that is managed by

another. Rivadeneira's reliance upon inapposite cases underscores this conclusion. He first cites to *Larance v. Bayh*, No. 3:94-cv-182RM, 1995 WL 46718 (N.D. Ind. Jan. 18, 1995), *aff'd sub nom. Abdul-Wadood v. Bayh*, 85 F.3d 631 (7th Cir. 1996). In that case, a magistrate judge found that the complaint failed to state a claim for any constitutional violations based upon the defendant's collection of interest earned on plaintiffs' inmate trust accounts or based upon any alleged deprivation of interest earned on the accounts. *Id.* at \*1. The magistrate judge also explained that another court had concluded that prisoners did not have a right under state law to the interest earned on their personal funds in an inmate trust fund and, therefore, had not been deprived of a protected property interest without due process of law. *Id.* The district judge adopted the magistrate judge's report and recommendation. *Id.* In affirming, the Seventh Circuit reiterated that Indiana law "does not provide the plaintiffs with any possessory right, actual or constructive, to the interest accrued on their inmate accounts." *Abdul-Wadood*, 85 F.3d at 631. Thus, *Larance* does not stand for the proposition that, under common law, an individual has property rights to funds that they own that are held in an account managed by another.

Rivadeneira also relies upon *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998). In *Phillips*, the Supreme Court considered whether interest earned on client funds held in Interest on Lawyer Trust Account Program accounts under Texas's Bar Rules constituted "private property" of either the client or the attorney for purposes of the Taking Clause of the Fifth Amendment. *Id.* at 159. Texas's Bar Rules provided that an attorney who received clients funds that were "nominal in amount" or

"reasonably anticipated to be held for a short period of time" must place those funds in a separate interest-bearing, negotiable order of withdrawal account. *Id.* at 161. The Court held that the "*interest income* generated by funds held in the accounts" constituted "private property" of the owner of the principal. *Id.* at 172 (emphasis added). Rivadeneira fails to explain how this case, which examined a scheme under Texas's Bar Rules, supports the proposition that common law provides individuals with property rights to funds they own in an account managed by another. Further, this case addressed the interest income generated by funds that were held in an account for another, whereas Rivadeneira and the members of the putative class allegedly paid tuition or fees to the University to attend.[8]

*LaFleur* persuasively rejects Rivadeneira's premise that payment of voluntary tuition and fees to a public university constitutes a taking. 2021 WL 3727832, at *7 ("To 'take' property under the Fifth Amendment means to deprive an owner of his own property against his will. The plaintiffs do not cite, nor can the court find, any case that holds a voluntary tuition and fee payment to a public university constitutes a

---

[8] Rivadeneira also asserts that USFBOT incorrectly argues that he does not have a property interest because the Higher Education Act of 1965 "requires an institution, such as USF, to be able to separately account for student payments as well as financial aid received on a student's behalf." Doc. 16 at 21–22. Notably, Rivadeneira fails to highlight a specific provision of the statute, instead only broadly citing to the entire Act. *Id.* at 21 n.9. Regardless, the ability to separately account for student payments and financial aid does not mean that Rivadeneira has a property right in funds paid to the University. Rivadeneira also argues that the University "must refund a specific portion of the charges to the account for the reduced education obligation on the student" if a student withdraws during the enrollment period, but Rivadeneira does not allege that he withdrew. As such, this argument is unavailing. *See Broer v. Fla. State Univ. Bd. of Trs.*, No. 4:21-cv-328-AW-MAF (N.D. Fla.) Doc. 27 at 4 (distinguishing between trust and contract).

'taking.'"). Like here, the plaintiffs in *LaFleur* premised their Fifth Amendment claim upon an owner's right under common law in funds held in an account managed by another. *LaFleur, et al. v. State Univ. Sys. of Fla., et al.*, No. 8:20-cv-1665-KKM-AAS (M.D. Fla.), Doc. 15 ¶¶65.

Finally, while a contract may create a property interest under Florida law, "[t]he existence of an enforceable contract with a state or local government entity does not give rise to a constitutionally protected property interest." *Key W. Harbour Dev.*, 987 F.2d at 727. A "breach of contract is neither a confiscation of property nor a taking of property without due process of law." *Shawnee Sewerage & Drainage Co. v. Stearns*, 220 U.S. 462, 471 (1911). Indeed, "[w]here a party's rights were 'voluntarily created by contract' with a government, 'interference with such contractual rights generally gives rise to a breach claim not a taking claim." *Keane v. Jacksonville Police Fire & Pension Fund Bd. of Trustees*, 775 F. App'x 496, 499 (11th Cir. 2019) (quoting *Baggett Transp. Co. v. United States*, 969 F.2d 1028, 1034 (Fed. Cir. 2012)). In *Keane*, the Eleventh Circuit explained that even though the contract was breached, the government did not take plaintiff-appellant's property because he retained "the range of remedies associated with vindication of a contract, such as a breach-of-contract claim." *Id.* (internal quotation marks omitted). This portion of the claim stems from the University allegedly depriving Rivadeneira of contracted-for educational benefits. He has not plausibly alleged a claim under the Takings Clause of the Fifth Amendment. *See Broer v. Fla. State Univ. Bd. of Trs.*, No. 4:21-cv-328-AW-MAF (N.D. Fla.) Doc. 27 at 5

("Because Broer maintained no property interest in tuition already paid, that tuition money could not be subject to an unconstitutional taking.").

For the foregoing reasons, to the extent that Rivadeneira bases the claim upon a purported property right in the tuition and fees paid to USF in exchange for educational benefits, Count III fails to state a claim for relief.

### 2. *Property Interest in Promised Educational Services*

Next, Rivadeneira argues that, because he entered into a contractual relationship where he would pay tuition and other fees in exchange for the provision of in-person learning and use of the facilities and amenities, he and members of the putative class had a constitutionally protected property interest in such learning, facilities, and amenities. Doc. 16 at 23. In identifying an independent source for the claim to entitlement, Rivadeneira cites to *Childers v. Florida Gulf Coast University Board of Trustees*, No. 2:15-cv-722-MRM, 2017 WL 1196575 (M.D. Fla. Mar. 31, 2017), and *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012), for the proposition that the "independent source can be a statute, an express or implied contract, a mutually explicit understanding, or an individual has property rights in their ongoing education." *Id.* at 22–23. Rivadeneira reiterates that he entered into a contractual relationship under which he would pay tuition and fees and that, as a result of the shift to online learning, his "property interest" in the "contracted for" services was taken. *Id.* at 23.

Here, similar to the property right discussed above, Rivadeneira bases this property interest on his failure to receive services that were promised to him under the

alleged contract. Again, while a contract may create a property interest under Florida law, the existence of an enforceable contract with a state or local government does not give rise to a constitutionally protected interest. And even if the Court somehow found that such a contract gave rise to a constitutionally protected property interest, the inquiry does not end: the Court must determine whether a deprivation of that interest constituted a taking. Interference with a voluntarily created contract "generally gives rise to a breach claim not a taking claim." *Keane*, 775 F. App'x at 499. Because this portion of the claim is also grounded in the University allegedly depriving Rivadeneira of contracted-for educational benefits, he has not plausibly alleged a claim under the Takings Clause of the Fifth Amendment. *See Broer v. Fla. State Univ. Bd. of Trs.*, No. 4:21-cv-328-AW-MAF (N.D. Fla.) Doc. 27 at 5.

Therefore, the Court will dismiss this claim. Rivadeneira requests leave to amend if the Court dismisses any claim as insufficiently pleaded. Doc. 16 at 24. However, in light of the analysis in this section, granting Rivadeneira leave to amend would be futile. As such, the Court dismisses this claim with prejudice. *See L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020).

### D. The Court Declines to Exercise Supplemental Jurisdiction

Rivadeneira's remaining claims arise under Florida law. The resolution of those claims will require analysis of Florida law. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Therefore, the Court will decline to exercise its supplemental jurisdiction over these remaining claims. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Because USFBOT removed this action and the Court declines to exercise supplemental jurisdiction over the remaining claims, the Court will remand this action.

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint (Doc. 13) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2. Count III (Violation of the Takings Clause of the Fifth Amendment) of the First Amended Complaint is **DISMISSED WITH PREJUDICE**.

3. Counts I (Breach of Contract), II (Unjust Enrichment), and IV (Inverse Condemnation under the Florida Constitution) are **DISMISSED WITH PREJUDICE** as to Defendant University of South Florida only.

4. The remaining state law claims, Counts I (Breach of Contract), II (Unjust Enrichment), and IV (Inverse Condemnation under the Florida Constitution) are **REMANDED** to the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida.

5. The Clerk is directed to send a certified copy of this order to the Clerk for the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida.

6. The Clerk is further directed to terminate all pending motions and deadlines and to **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on February 14, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any